# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

DICKEY LEE POST, )
)
          Plaintiff, )
)
v. ) Case No. CIV-14-317-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
          Defendant. )

## OPINION AND ORDER

The claimant Dickey Lee Post requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

### Claimant's Background

The claimant was born November 12, 1959, and was fifty-two years old at the time of the administrative hearing (Tr. 50, 176). He has a high school equivalent education, and has worked as a backhoe operator and an insulator (Tr. 41, 53, 203). The claimant alleges that he has been unable to work since September 30, 2006, due to emphysema (Tr. 176, 202).

### Procedural History

On August 11, 2011, the claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ John Belcher conducted an administrative hearing and a supplemental administrative hearing and determined that the claimant was not disabled in a written opinion dated April 15, 2013 (Tr. 12-23). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a limited range of medium work, *i. e.*, he could lift, carry, push, or pull up to twenty-five pounds frequently and up to fifty pounds occasionally; sit/stand/walk eight hours in an eight-hour workday; but could only frequently reach overhead and needed to avoid moderate exposure to fumes, odors, dust, toxins, gases, and poor ventilation (Tr. 17). The ALJ concluded that the claimant was not disabled because he could return to his past

relevant work of backhoe operator (Tr. 21). However, the ALJ alternatively concluded that there was other work the claimant could perform, *e. g.*, fast food worker, cashier, and cafeteria attendant (Tr. 22).

## Review

The claimant contends that the ALJ erred by failing to: (i) properly analyze the opinion of consultative examiner Dr. Jennings, (ii) develop the record, (iii) consider the combined effects of his nonsevere impairments when assessing his RFC, and (iv) properly analyze the Third Party Function Reports. The undersigned Magistrate Judge finds that the ALJ *did fail* to properly assess his RFC, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant had the severe impairments of cervical spine degenerative disc disease, emphysema with chronic obstructive pulmonary disease (COPD), gastroesophageal reflux disease (GERD), duodenitis, hiatal hernia, and diverticulitis; but that his right hand and wrist pain, hepatitis C, prostatitis, mild lumbar and thoracic spine degenerative disc disease, mild degenerative changes in the left shoulder, and anxiety disorder were not severe; and that his left hand, wrist, and elbow pain was not medically determinable (Tr. 15). The relevant medical evidence reveals that the claimant was diagnosed with emphysema, tobacco use disorder, and chronic obstructive disorder (COPD), largely receiving treatment WW Hastings Indian Hospital (WWH) for these diseases (Tr. 429, 599-603, 605, 607-608, 646-49, 652-56, 659-69, 677-85, 691-715, 846-50, 851-63, 867-71, 888-95).

As to the claimant's mental impairments, he presented to WWH on May 3, 2010, and reported anxiety lasting for more than a year with a recent increase in symptoms as well as sad moods; he was largely treated by nurse practitioner Sherri Trammel in the form of medication management from September 2010 through August 2012 (Tr. 686-90). Treatment notes reflect that through November 2011, the claimant reported continued and/or increased anxiety, as well as depression and sleep problems, and thereafter, Ms. Trammel's notes reflect that his anxiety was under control and his depression was improved (Tr. 647, 652, 659, 661-62, 664-69, 670-73, 689, 846, 852, 855,. 858, 860-61, 869-71, 888-89).

State reviewing physician Dr. Janice Smith reviewed the claimant's records on December 12, 2011, and completed a Psychiatric Review Technique Form (Tr. 824-37). She found the claimant's anxiety was not severe, but that he was mildly limited in his activities of daily living, and not restricted in any of the other areas of functioning (Tr. 834). Dr. Smith noted that the claimant reported increasing anxiety in September 2010 and ineffective medications in November 2010, that he received an anxiety medication refill in August 2011, and then reported no anxiety or depression in November 2011 (Tr. 836). She concluded that the claimant's anxiety and depression were mild and well controlled by medication (Tr. 836).

At the initial hearing, the claimant testified he shakes when he is under stress and that he takes medication which effectively controls his stress (Tr. 70). He stated he sometimes gets confused while watching television because he starts to think about other things (Tr. 70).

Two family members also completed Third Party Function Reports for the claimant. The claimant's cousin Callie Hathcoat stated that he appeared to have anxiety, had no problems with attention, but could follow written instruction fairly well and spoken instructions "ok" (Tr. 228, 233). She further stated the claimant did not handle stress well and became stressed easily (Tr. 234). Timmy Post, the claimant's brother, stated the claimant sometimes prepared his own meals, washed dishes, and did laundry (Tr. 290). He further stated the claimant could pay bills, but could not count change, handle a savings account, or use a checkbook/money orders (Tr. 291). He also stated the claimant could not pay attention very long, could not follow written instructions very well, but could followed spoken instruction "ok" (Tr. 293).

In his written opinion, the ALJ discussed the claimant's testimony, mentioned the Third Party Function Reports, and summarized the medical evidence. In discussing the severity of the claimant's anxiety disorder at step two, the ALJ noted the claimant's June 9, 2011, office visit with Ms. Trammel and found his anxiety symptoms were well controlled (Tr. 15). The ALJ also gave great weight to Dr. Smith's opinion, finding it was consistent with and supported by the medical evidence in the record (Tr. 16). As to the Third Party Function reports, the ALJ mentioned them while discussing the claimant's activities of daily living; however, he gave them no weight because he found they were completed by empathetic relatives and were not based on objective medical evidence (Tr. 16, 21).

The ALJ discussed all of the claimant's severe and nonsevere medically determinable impairments individually at step two, but failed to consider all his

impairments *in combination* when formulating the claimant's RFC at step four. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. In this case, the ALJ failed to even mention the claimant's nonsevere impairments of right hand and wrist pain, prostatitis, mild lumbar and thoracic spine degenerative disc disease, mild degenerative changes in the left shoulder, and anxiety disorder, in formulating his RFC. He thus further failed to assess the combined effect of *all* the claimant's impairments – both severe and nonsevere – in assessing the RFC. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

The ALJ also erred in evaluating the Third Party Function Reports. Social Security Ruling 06-03p (SSR 06-03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in their professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 (Aug. 9, 2006). SSR 06-03p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *5-6. The ALJ mentioned the Third Party Function Reports, but discredited them by stating they were empathetic with the claimant and not based on objective medical evidence, wholly failing to properly evaluate them in accordance with the factors set out in SSR 06-03p. The ALJ's task in evaluating credibility of lay witness testimony is precisely to determine whether the witness's opinion is sincere or insincere, and then determine what weight, if any, to ascribe to the opinion or testimony. *See Spicer v. Astrue*, 2010 WL 4176313, *2 (M.D. Ala. Oct. 18, 2010) (finding that an ALJ's rejection of a lay witness statement because it was not a substitute for an appropriate medical opinion must *not* be based on a rationale that "applies with equal force to every 'lay statement.'"). Notably, while it may be appropriate for the ALJ to reject lay witness testimony that is based on the subjective complaints of a claimant when the ALJ has already determined that the claimant is not credible, *see, e.g., Valentine v. Commissioner Social Security Administration*, 574 F.3d 685, 694 (9th Cir. 2009) ("Mrs. Valentine's testimony of her husband's fatigue was

similar to Valentine's own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [Valentine's] allegations.' In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."), he is not entitled to reject *all* lay witness testimony with a blanket statement and without the proper analysis.

Because the ALJ failed to properly account for the *all* the claimant's impairments at step four, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis of *all* the evidence. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 30th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**